**UNITED STATES of America, Appellee,**

v.

**Humberto TOBAR et al., Defendants-Appellants.**

**Nos. 900–902, Docket 71–1160–71–1162.**

United States Court of Appeals, Second Circuit.

Argued May 12, 1971.

Decided May 26, 1971.

**836**

Jerome Lewis, New York City (Jerome C. Ditore, New York City, of counsel), for appellant Lopez.

Joseph A. Solovei, Brooklyn, N. Y., for appellants Colon and Tobar.

Peter R. Schlam, Asst. U. S. Atty. (Edward R. Neaher, U. S. Atty. for the Eastern District of New York, and David G. Trager, Asst. U. S. Atty., of counsel), for appellee.

Before FRIENDLY, Chief Judge, WATERMAN and HAYS, Circuit Judges.

PER CURIAM:

The Government's version of the facts in this case was as follows: Pursuant to an informer's tip that the Colombian flag ship *Buenaventura* was carrying cocaine into the country, two narcotics agents and a customs agent were maintaining surveillance of the vessel, which was docked at a Brooklyn pier, during the early morning hours of May 27, 1970. They observed Lopez dart through an adjacent railroad yard, climb over a fence to the pier area, run along the water's edge, and then disappear behind the *Buenaventura's* bow. A few minutes later he reappeared with a blue plastic bag slung over his shoulder. He threw the bag over the fence which separated the pier area from the railroad yard, jumped over the fence, retrieved the bag, and ran toward a pickup truck parked near the agents' observation post. One of the agents descended, so as to keep Lopez in continuous view. The latter ran toward a second fence, pushed the blue bag and himself under it, ran to a trailer under which he stooped, and then alternately ran and walked down Furman Street. As he got within 100 feet of a red Karman Ghia parked on an adjoining street, the car pulled onto Furman Street and Lopez entered, joining two men—later identified as Tobar and Colon—who were already inside. The car sped off and the two other agents, who had meanwhile descended from their observation post, gave chase. Attempting a turn in the midst of the chase, the Karman Ghia crashed into a parked auto. Its windshield broke and the blue plastic bag was seen to fly out. Lopez ran in one direction and Tobar in another. The agents caught and arrested them as well as Colon, who had remained behind the wheel. The blue bag, found some 10 feet in front of the Karman Ghia, contained 14 packages of cocaine, aggregating 5 kilograms, 98.9% pure.

Defendants were indicted in the District Court for the Eastern District of New York, on two counts. The first was for importing the cocaine; the second for receiving, concealing and facilitating the transportation of imported cocaine, knowing the same to have been illegally imported. Appellants testified that they had been drinking at a bar from 10 P.M. until around 3 A.M. on the morning of the accident and had become intoxicated; that Colon lost control of the car while driving home; and that they were all in the car when arrested. They denied having been at the Brooklyn pier and claimed not to have possessed a package of any color. The jury acquitted on the first count and convicted on the second.

Judge Weinstein did not charge the inference permitted by 21 U.S.C. § 174 as such, although, in view of the quantity of cocaine he properly could have. In his instructions on the first count he

told the jury that if they found that one of the defendants took the cocaine from the ship or that it had been on the dock only a short time after being unloaded from the ship, they could conclude it had been imported by that defendant and that the other two had aided or abetted the importation; *per contra* if they found the cocaine had been brought to the dock from the land or had been sitting on the dock for a substantial time after being unloaded by someone else. He also instructed appropriately with respect to knowledge. When he came to the second count, after referring back to his charge on the first, he told the jury "the Government must prove that the defendants knew that the bag contained cocaine. It must also prove that they knew that the cocaine was illegally imported and knowledge may be inferred from the defendant's possession, if any, the conduct, if any and all the other facts and circumstances in the case."

Complaints are made of this charge and also of the fact that, after allowing defense counsel to read to the jury the statistics about stolen cocaine in Turner v. United States, 396 U.S. 398, 418–419, notes 36 and 37, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), the judge read some figures for more recent years which this court has recently cited in United States v. Gonzalez, 442 F.2d 698, 708, notes 6–8 (1971). As applied to this case, the arguments border on the frivolous. If the agents were telling the truth, it would be utterly absurd to suppose that anyone who had stolen so large an amount of cocaine[1] from legitimate domestic production would choose to transfer it at an early morning hour on a Brooklyn pier in the shadow of a Colombian ship. Nothing in the law requires jurors to leave their common sense behind when they enter the jury room.

The contention of insufficiency of the evidence with respect to Colon and Tobar requires little comment. There again the only real issue was credibility.

It would defy belief that a car should be parked at 3 A.M., conveniently near the place where Lopez exited with his blue bag containing 5 kilograms of cocaine, should pick him up, and dash off at a high rate of speed, and that then, on crashing, Tobar and Lopez should both flee, unless Tobar and Colon were part of Lopez' considerable criminal enterprise. Appellants' other claim, that the judge made a slight and in our view harmless error in misreading the second count of the indictment, is even more trivial.

Judgment affirmed.

---

1. The quantity here, five times the amount in *Gonzalez*, was over 75% of total thefts of domestically produced cocaine in 1969. See United States v. Gonzalez, *supra*, n. 6.