**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Enrique Juan ARMENTEROS, Defendant-Appellant.**

**No. 71-1228**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Dec. 30, 1971.

Carlos B. Fernandez, Miami, Fla. (court appointed), for defendant-appellant.

Robert W. Rust, U. S. Atty., Richard A. Hauser, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

---

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409 Part I.

**WISDOM, Circuit Judge:**

Enrique Juan Armenteros was convicted and sentenced to seven years imprisonment for receiving, concealing, buying, and facilitating the transportation of a narcotic drug knowing the drug to have been illegally imported or brought into the United States in violation of 21 U.S.C. §§ 173 and 174.[1] He challenges the constitutional validity of the statutory presumption of knowledge from the fact of possession:

> Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.

21 U.S.C. § 174. Because we believe that the presumption may be used in this case, we affirm.

On November 4, 1971, federal customs agents discovered eleven and ¾ pounds (5,329 grams) of 92 percent pure cocaine hydrochloride concealed in suitcases brought into the United States by Mr. Ricardo Cornejo-Arias. Cornejo-Arias was arrested and agreed to co-operate with customs officials. Before departing from Lima, Peru, Cornejo-Arias had been given a business card of the Dixie Atlantic Motel in Coral Gables, Florida, and asked by a Mr. Vidal to carry the suitcases to the motel. The customs agents transported Cornejo-Arias to the motel where he registered and went to his room with the suitcases. Shortly thereafter defendant-appellant Enrique Juan Armenteros arrived, entered the room, and said that he had come to pick up the suitcases. Armenteros gave Cornejo-Arias $1000 in $20 bills and took two of the suitcases. He was arrested as he was placing the suitcases in his automobile. After Armenteros was advised of his constitutional rights, he was asked if he knew there was cocaine in the suitcases and if he had come to pick up the cocaine; he replied, "Yes, sir." A search of Armenteros's person produced (1) a small vial containing a small quantity of 02.2 percent pure cocaine hydrochloride, (2) a business card for the Dixie Atlantic Motel containing Cornejo-Arias's name, several telephone numbers, and the names of overseas airlines and flight numbers including Land-Chile, Flight No. 25 and Aerovias Perua, Flight No. 27, and (3) a key which would unlock the suitcases. It should also be noted that attached to the suitcases were baggage tags indicating their foreign origin.

The trial judge instructed the jury as follows as to knowledge of illegal importation, an essential element of the offense:

> If the jury should find beyond a reasonable doubt that the accused has had possession of cocaine, the fact of such possession alone, unless explained to the satisfaction of the jury by the evidence in the case, permits or does not require the jury to draw the inference and find that the cocaine was imported or brought into the United States of America contrary to law, and to draw the further inference and find that the accused had knowledge that the cocaine was imported or brought in contrary to law.

However, as previously stated, the accused is presumed innocent until proved guilty beyond a reasonable doubt. No burden or duty is imposed

---

[1]. Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000.
21 U.S.C. § 174. The provision was repealed as of May 1, 1971. Pub.L. 91–513, Title III, § 1101(a) (2), Oct. 27, 1970, 84 Stat. 1291.

upon the accused to produce proof that the cocaine was lawfully imported or any other evidence. The burden is always upon the prosecution to prove beyond a reasonable doubt every essential element of the crime charged.

The law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

In considering whether possession of cocaine has been satisfactorily explained, you are reminded that in the exercise of his constitutional rights, the accused need not testify. There may be satisfactory means for explaining possession by facts and circumstances in evidence, independent of any testimony or other evidence from the accused.

The jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

If the evidence in the case leaves the jury with a reasonable doubt whether any possession of the cocaine involved in this case was innocent, then the jury should acquit the accused.

Armenteros does not dispute the fact of possession; he argues that the statutory presumption of knowledge of illegal importation from the fact of possession is unconstitutional. Taking the view of the evidence most favorable to the government, Glasser v. United States, 1962, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed.2d 680, there is ample evidence, independ-

ent of the presumption, to sustain the jury's conclusion that Armenteros knew that the cocaine was illegally imported. The presumption was, however, explained to the jury, and the jury may have relied on the presumption in reaching its verdict. In these circumstances, we must consider the constitutional validity of the presumption. *See* Stromberg v. California, 1931, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117; United States v. Romano, 1965, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210; Leary v. United States, 1969, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57.

In Leary v. United States, 1969, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57, the Supreme Court held that the presumption in 21 U.S.C. § 176a,[2] which authorized a jury to infer from a defendant's possession of marihuana that he knew of the illegal importation, was unconstitutional. While recognizing that, in evaluating legislative presumption, " 'significant weight should be accorded the capacity of Congress to amass the stuff of actual experience and cull conclusions from it' ", 395 U.S. at 38, 89 S.Ct. at 1549, the Court stated that the " 'controlling' test for determining the validity of a statutory presumption was 'that there be a rational connection between the fact proved and the fact presumed.' " 395 U.S. at 33, 89 S.Ct. at 1546.

[A] criminal statutory presumption must be regarded as "irrational" or "arbitrary," and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.

2. Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marihuana after being imported or brought in, knowing the same to have been imported or brought into the United

States contrary to law, or whoever conspires to do any of the foregoing acts, shall be imprisoned . . .

Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury.

21 U.S.C. § 176a.

395 U.S. at 36, 89 S.Ct. at 1548.[3] As applied to the facts of *Leary*, the test became:

> [W]hether it can be said with substantial assurance that one in possession of marihuana is more likely than not to know that his marihuana was illegally imported.

> \* \* \* \* \* \*

> We conclude that in order to sustain the inference of knowledge we must find on the basis of the available materials that a majority of marihuana possessors either are cognizant of the apparently high rate of importation or otherwise have become aware that *their* marihuana was grown abroad.

395 U.S. at 46–47, 89 S.Ct. at 1553.

After an elaborate inquiry into the extent of knowledge of illegal importation which an average marihuana user has and the possible sources of that knowledge, 395 U.S. at 45–52, 89 S.Ct. 1532, the Court concluded that the presumption was unconstitutional. The *Leary* case is important to our present inquiry because it resolved a conflict as to the proper test to be used in judging the constitutional validity of a statutory presumption,[4] and provides an example of the proper method of inquiry.

In Turner v. United States, 1970, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610, the Supreme Court was faced with a constitutional challenge to the identical statutory presumption involved in the instant case. The Court held that the statutory presumption could not constitutionally be applied to authorize the jury to infer, from the defendant's possession of 14.68 grams of 5 percent pure cocaine hydrochloride, that the defendant had knowledge of its illegal importation. The Court noted the extent of the thefts of cocaine from legal sources,[5] and the fact that much more cocaine is lawfully produced in this country than is smuggled into this country.[6] Turner possessed only a small amount of cocaine, and the Court left for another day the question of whether the presumption could constitutionally be applied to a possessor of a large amount of cocaine.

Since the illegal possessor's only source of domestic cocaine is that which is stolen, the United States urges that the § 174 presumption may be valid with respect to sellers found with much larger amounts of cocaine than Turner had, amounts which, it is claimed, are too large to have been removed from legal channels and which must therefore have been smuggled. Brief for the United States 31. We find it unnecessary to deal with these problems and postpone their consider-

---

3. The Court did not reach the question "whether a criminal presumption which passes muster when so judged must also satisfy the criminal 'reasonable doubt' standard if proof of the crime charged or an essential element thereof depends upon its use." 395 U.S. at 36 fn. 64, 89 S.Ct. at 1548. We similarly decline to reach that question at this time as we believe that the use of the presumption in this case may be sustained under either standard. See also Turner v. United States, 1970, 396 U.S. 398, 416, 419, 90 S.Ct. 642, 24 L.Ed.2d 610; United States v. Vasquez, 2 Cir. 1970, 429 F.2d 615, 618 fn. 4.

4. *See* Leary v. United States, 1969, 395 U.S. 6, 32–37, 89 S.Ct. 1532, 23 L.Ed.2d 57.

5. From 1963 through 1968, the amount of cocaine stolen from legal channels annually ranged from 2.8 kilograms to 6.2 kilograms.
396 U.S. at 419 fn. 37, 90 S.Ct. at 654.

6. In 1966, 609 kilograms of cocaine were produced. U.S. Treasury Department, Bureau of Narcotics. Traffic in Opium and Other Dangerous Drugs, Report for the Year Ended December 31, 1967, p. 42 (1968). Annual seizures of cocaine at ports and borders for the years 1963 through 1967 ranged from 1.44 kilograms to 17.71 kilograms; the Bureau of Narcotics and Dangerous Drugs estimates that no more than about 10% of cocaine that is attempted to be smuggled into the United States is discovered and seized at ports and borders. Brief for the United States 31 n. 31.
396 U.S. at 418 fn. 36, 90 S.Ct. at 653.

ation to another day, hopefully until after the facts have been presented in an adversary context in the district courts.

396 U.S. at 419 fn. 39, 90 S.Ct. at 654.

Today we are faced with the constitutionality of the statutory presumption as applied to a defendant found with a large amount of cocaine. Armenteros was found with 5329.8 grams of cocaine, an amount equal to more than 100 percent of all cocaine stolen from domestic sources in an average year.[7] It stretches credibility to imagine that such an enormous amount of cocaine was not illegally imported and that the possessor did not know of its illegal importation. In addition, unlike Turner,[8] there is ample evidence of knowledge of illegal importation independent of the presumption. In these circumstances, "it can be said with substantial assurance that one in possession of [cocaine] is more likely than not to know that his [cocaine] was illegally imported." 395 U.S. at 46, 89 S.Ct. at 1553.

The case of United States v. Gonzalez, 2 Cir. 1970, 442 F.2d 698, aff'd en banc, 442 F.2d 698 (1971), cert. denied sub nom. Ovalle v. United States, 404 U.S. 845, 92 S.Ct. 146, 30 L.Ed.2d 81 (1971), is instructive. In that case, a panel of the Second Circuit, over the dissent of Judge Kaufman, and the Court sitting en banc, over the dissents of Judges Smith, Kaufman, and Feinberg, approved the use of the identical presumption at issue here. In Gonzalez the defendants were found with 1.028 grams (over two and one-fifth pounds) of cocaine and convicted at a trial where the jury was instructed as to the § 174 presumption. The en banc Court upheld the use of the presumption stating:

This conclusion was founded on the evidence that appellants were dealers in, and had proposed to sell, large quantities of cocaine and on the proposition that "[p]ersons who deal in large quantities of hard narcotics as heroin and cocaine are bound to discover, if they do not already know, that their product could not practicably have derived from domestic sources." When the basic fact of one's possession of large quantities of cocaine is shown, an inference may be rationally drawn that the possessor is a dealer in cocaine and thus in all likelihood knew of the cocaine's illegal source.

Inasmuch as the amount of cocaine stolen from domestically produced sources is but a significantly minor quantity in comparison to the amount of cocaine illegally imported, and inasmuch as the average theft is only nine grams . . ., the creation of a rebuttable inference that, in the absence of explanation, the possessor of a large quantity of cocaine knew it was imported is sufficiently rational to withstand all constitutional attacks. The discussion in *Turner* with respect to heroin, 396 U.S. at 416–417, 90 S. Ct. 642, appears to us to be almost directly in point.

---

7. An Annual Report of the Bureau of Narcotics and Dangerous Drugs (1969) discloses that in the calendar year 1968 less than 5.5 kilograms of cocaine were stolen from legitimate U. S. sources and that in the ten-year span 1959–1968 inclusive, the average of yearly thefts was slightly over 4 kilograms. The Bureau's statistics also disclose that in 1969 slightly less than 6.5 kilograms of cocaine were stolen from legitimate channels.

\* \* \* \* \*

The Department of Narcotics and Dangerous Drugs reports that cocaine thefts amounted in 1967 to 5.033 kilograms in 674 thefts, in 1968 to 5.470 kilograms in 738 thefts, and in 1969 to 6.472 kilograms in 730 thefts. These figures are a matter of public record, and we accordingly take judicial notice of them. The figures indicate, for example, that in 1969 the average domestic theft of legally possessed cocaine was approximately 9 grams, or less than one-third of an ounce.

442 F.2d at 708 fns. 6 and 8.

8. In *Turner*, the Government offered no evidence as to Turner's knowledge of illegal importation. *See* 404 F.2d 782, 783 (3 Cir. 1968).

442 F.2d at 710 (footnotes omitted).[9]

The instant appeal presents an even stronger case for use of the presumption. Armenteros was found with more than five times the amount of cocaine involved in *Gonzalez*. In addition, the prosecution presented far more evidence of independent knowledge of illegal importation in the instant case than in *Gonzalez*. In short, the use of the § 174 presumption was proper in this case.[10]

Affirmed.

---

**9.** See also United States v. Tobar, 2 Cir. 1971, 443 F.2d 835.

**10.** The dissenters in *Gonzalez*, while indicating tentative agreement with the majority as to the validity of the presumption, criticized the majority for approving the use of the presumption without remanding the case to the district court for an adversary hearing on the constitutionality of the presumption.

> I find *no* relevant evidence properly before us upon which to base any conclusion about the likelihood that an average possessor of a "large" quantity of cocaine—whatever that might be— will know that the narcotic was probably imported.
>
> \* \* \* \* \* \*
>
> It may be that upon a proper record the majority would be correct in concluding that the presumptions are valid, at least as applied to one kilogram or other "large quantities" of cocaine. But these issues should be decided after

an adversary hearing in the district court on the validity of the presumptions. I would remand for such a hearing.

442 F.2d at 711. To this the en banc majority replied:

> Although we agree that such an adversary hearing might well elicit valuable statistical information, we do not interpret the Supreme Court's language to prevent appellate consideration of the issue upon facts adversarily presented to juries prior to *Turner* or to imply anything more than the "hope" that, should the issue of the presumption's rationality be raised on appeal, a full record would be available on the issue. Indeed, *Turner* itself indicates that, where adequate information is available for the taking of judicial notice, an appellate court should use such information.

442 F.2d at 707 (footnotes omitted). We agree with the reasoning of the majority in the circumstances of the instant case.