**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Oslet Franklin CANSECO, Defendant-
Appellant.**

No. 71-2986
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 1, 1972.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Jesse J. McCrary, Jr., Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Michael P. Sullivan, Miami, Fla., for plaintiff-appellee.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

AINSWORTH, Circuit Judge:

Canseco appeals from his conviction of fraudulently and knowingly importing into the United States approximately 4,479.3 grams of cocaine, in violation of 21 U.S.C. §§ 173, 174.

On appeal Canseco contends that the District Court erred in (1) denying his motion to suppress certain evidence, (2) denying his motion to exclude statements made by him to Customs agents, and (3) denying his motion for a directed verdict of acquittal. Finding no error, we affirm.

United States Customs officials discovered a large quantity of cocaine in a gray unclaimed suitcase in the baggage carousel of Pan-American Airlines, on the evening of February 23, 1971, shortly after the arrival of a commercial Pan-American plane from Quito, Ecuador, to Miami, Florida. The name on the baggage tag attached to the suitcase was not that of any passenger listed on the flight. After having removed the cocaine, a Customs agent placed the suitcase back in the enclosure to wait for a claimant to pick it up. The suitcase was subsequently removed but the individual who retrieved it was not seen. Through a series of circumstances and incidents which followed (which are unnecessary to detail here for the purpose of this appeal) appellant Canseco, a fellow passenger, Betty Jean Joseph, and a porter employed by Pan-American, William Lynch, became suspect. Surveillance of appellant's two residences, an apartment and a house, was established by Customs agents. Surveillance of the house resulted in the following observations:

Lynch entered and left the house. Thereafter Betty Jean Joseph entered, carrying a gray suitcase similar to the one from which the narcotics had been removed. Approximately ten minutes later appellant Canseco emerged from the house, entered a vehicle and started to drive off. He proceeded for about a block and was stopped by Customs Agent Allen who pulled his vehicle into the path of Canseco's car. Agent Allen

identified himself and read to appellant a statement of his rights required under Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which appellant said he understood. In response to questioning by Agent Allen, appellant said that he had been a passenger on the Pan-American flight from Ecuador. When asked about the whereabouts of his luggage, he said, "It's in my home. Do you want to look at it?" Allen said that he did, whereupon appellant led Agents Allen and Buchanan, another Customs official, to his home and into the bedroom. There Allen observed the gray suitcase which he had seen at the airport and told Canseco that he was under arrest for conspiracy to import cocaine into the United States. Allen and Buchanan then took the suitcase, placed Canseco in the government vehicle, and proceeded to the Customs office at Miami International Airport. There Canseco was asked by McCutcheon, a Special Agent with the Bureau of Customs, if he had been advised of his rights and whether he was aware of them. He answered affirmatively and said that he wanted to relate what had happened. He said that when he arrived at the Customs enclosure he could not locate the gray suitcase. After clearing Customs with two other suitcases, he ran into a friend, William Lynch, the Pan-American porter. Canseco said he gave the claim check to Lynch who delivered the suitcase to him outside Customs after about two minutes. He said that he had packed all three suitcases. Appellant insisted that his apartment be searched and that a second search be conducted at his house. A consent-to-search form was prepared which appellant signed. A search of the apartment uncovered various narcotics paraphernalia contained in a paper sack.

Appellant contends that since he was not specifically informed of his right to refuse a search, or advised as to what was necessary to procure a search warrant, he did not knowingly and intelligently waive his Fourth Amendment rights, and therefore his consent was invalid. We do not agree.

The record reflects that petitioner was informed of his *Miranda* rights and that he fully understood them. Nevertheless, he elected to waive his right to silence. He not only invited the agents to search his premises but later insisted on a second search and executed the consent-to-search form. There is no evidence of any threat or duress which would render either search invalid. To the contrary, the testimony of the government witnesses convinces us of appellant's willingness to have his premises searched. Where *Miranda* warnings are adequate, further specific warnings relating to Fourth Amendment search rights are unnecessary to validate the search, particularly where, as here, the searches were initiated as a result of appellant's unsolicited invitation. See United States v. Noa, 9 Cir., 1971, 443 F.2d 144; United States v. Goosbey, 6 Cir., 1970, 419 F.2d 818; Government of Virgin Islands v. Berne, 3 Cir., 1969, 412 F.2d 1055, cert. denied, 396 U.S. 837, 90 S.Ct. 96, 24 L.Ed.2d 87 (1969); Gorman v. United States, 1 Cir., 1967, 380 F.2d 158.

Likewise, without merit is appellant's contention that the Trial Court erred in admitting statements made to Customs agents concerning his return flight to the United States from Ecuador. As the basis for this contention, appellant urges that it was incumbent upon the arresting officers to advise him of his *Miranda* rights at the time that they advised him he was under arrest. Appellant's argument, in effect, is that the arrest without a second warning at that time of the consequences of incriminating himself is contrary to the holding of *Miranda*, and that therefore his statements should have been excluded. Decisions holding that *Miranda* warnings come too late are legion. Here, however, appellant makes the converse argument. He complains that the warning was premature.

The import of *Miranda,* insofar as it relates to this case, is that the

warning of the right to remain silent must be made prior to questioning of an individual whose freedom is curtailed by authorities in any significant way. 384 U.S. at 479, 86 S.Ct. at 1630. In determining when an individual's right to *Miranda* warnings arises, "[n]o single criterion is necessarily decisive. Instead, each case must be examined to determine whether there were present the compulsive factors with which *Miranda* was concerned." United States v. Montos, 5 Cir., 1970, 421 F.2d 215, 223. Under the circumstances, the warnings given by Agent Allen prior to questioning appellant was a proper exercise of good law enforcement tactics. The efficacy of the initial warning was in no way diluted in the short period of time which elapsed between the warning, the arrest, and the statements made by appellant. Cf. United States v. Hopkins 5 Cir., 1970, 433 F.2d 1041. Moreover, because of appellant's reaffirmance to Agent McCutcheon at the airport Customs office that he had been informed and was aware of his rights, additional warnings would have been superfluous. The Trial Court correctly refused to apply the exclusionary rule to the statements of the testifying officer.

■ Finally, appellant contends that the Court erred in denying his motion for a directed verdict of acquittal because of the failure of the government to establish a prima facie case of illegal importation of the cocaine and his knowledge thereof as required by 21 U.S.C. § 174.[1] He contends that in light of Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), the government was required to furnish independent proof of the origin of the narcotics. In *Turner* the Supreme Court found the Section 174 presumption of knowledge of importation from the fact of possession invalid as applied to Turner, who was charged with possessing 14.68 grams of 5 percent cocaine, but felt "it unnecessary to deal with [problems of larger amounts] and postpone[d] their consideration to another day", 396 U.S. at 419, 90 S.Ct. at 654 n. 39. We distinguished *Turner* in United States v. Armenteros, 1971, 452 F.2d 1177 (involving 5,329 grams of cocaine) and approved the use of the Section 174 presumption, as did the Second Circuit in United States v. Gonzales, 1970, 442 F.2d 698 (involving 1,028 grams of cocaine), on the basis of the quantity of the drug.[2] In the instant case the amount of cocaine in question is 4,479.3 grams. But the Trial Court refrained from instructing the jury on the statutory presumption. Though relying on *Turner*, appellant's argument is addressed to the alleged insufficiency of evidence to prove that the drug was imported. The record establishes that there was ample evidence upon which the jury could rely in concluding that the cocaine originated outside of the United States. Customs Declarations for the Pan-American flight from Ecua-

1. "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition may be fined not more than $20,000. . . .

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." 21 U.S.C. § 174. Repealed May 1, 1971. Pub.L. 91–513.

2. See also Walker v. United States, 5 Cir., 1970, 433 F.2d 306, in which we held that the use of a similar presumption contained in 21 U.S.C. § 176a (found to be invalid in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969)), in regard to the possession of marihuana, was harmless where the jury could conclude guilt from the evidence without relying on the presumption.

dor to Miami listed both appellant and Betty Jean Joseph as passengers. Appellant packed the suitcase from which the drug was seized. The suitcase was observed being delivered to appellant by a fellow passenger shortly after the flight. Viewing the evidence in the light most favorable to the government, we find substantial evidence to support the verdict. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

We have examined all of appellant's contentions and find that none of them warrants reversal.

Affirmed.