JAMES E. GRAVES, Circuit Judge,
concurring:
I agree with the majority that Montgomery’s consent to Officer Casarez’s search of his cell phone was sufficiently attenuated from the assumed Fourth Amendment violation so as to dissipate the taint of that violation. See United States v. Chavez-Villarreal, 3 F.3d 124, 127 (5th Cir.1993). I also agree with most of the majority’s discussion of the factors to be considered to determine if Montgomery’s consent to the search of the cell phone was an independent act of free will.
Respectfully, in my view, Montgomery’s actions do not constitute “unsolicited consent.” Montgomery did not volunteer his consent to search the phone to the officers, nor did he request that the officers access his cell phone to remove the photos. Instead, Montgomery repeatedly requested that he himself be allowed to access his own cell phone to delete pictures of “naked women” because he said he did not want his father to see the pictures. Officer Casarez testified that Montgomery “wanted to use the phone to see if he could erase the pictures of the naked women.” In response to Montgomery’s repeated requests to be allowed to use the phone, “I told him I would help him do that, get rid of those pictures so that his dad won’t get mad but I also told him I wanted the phone number of his drug dealer.” Casarez testified that Montgomery agreed to that trade, and further agreed to guide Casarez to navigate the phone to get the phone number of the drug dealer. To unlock or wake up the phone, Casarez pushed a button on the phone at the direction of Montgomery, at which point a pornographic picture of what Casarez believed to be a nude seven- or eight-year-old girl “popped up.”
I would not find that this exchange constituted “unsolicited consent” or a voluntary invitation for the officers to access his phone. The most reasonable reading of Casarez’s testimony is that the idea of Casarez accessing the phone was raised by Casarez, not by Montgomery. Montgomery’s request that he be allowed access to his phone and subsequent agreement to the trade that Casarez suggested is not akin to the invitations to search in cases such as United States v. Canseco, 465 F.2d 383, 385 (5th Cir.1972) (suspect told agents where his luggage was and said “It’s in my home. Do you want to look at it?” and subsequently “insisted that his apartment be searched and that a second search be conducted at his house”), United States v. Mendoza-Salgado, 964 F.2d 993, 1012 (10th Cir.1992) (suspect’s wife, a joint owner of the house that was searched “broached the search issue herself after officers told her they believed cocaine existed on the premises” and told agents to “go ahead and search,” before being asked for consent), and Hubbard v. Tinsley, 350 F.2d 397, 398 (10th Cir.1965) (upon being questioned about a locker located in a bus depot, suspect, who already been advised of his rights, said: ‘You have got the key; go see for yourselves.”). Thus, this case is different from the cases in which defendants offered unsolicited consent or actually invited officers to conduct a search.
However, in the circumstances of this case, I agree with the majority that Montgomery did consent to at least a limited *278 search of the phone and that his consent did constitute an independent act of free will. Most significantly, it is true that Montgomery himself raised the issue of deleting pictures from the phone, and that the officers expressed no independent interest in the contents.of the phone until Montgomery raised the issue. Although Montgomery requested that he be allowed to access the phone, he did subsequently agree to Casarez “help[ing] him” to delete the pictures and to assisting Casarez in obtaining the phone number of his drug dealer, which necessarily involved Casarez looking at the contents of the phone. Montgomery then actively assisted Casarez gaining access to the phone by directing him which buttons to push. Further, Casarez’s search did not extend beyond the consent that Montgomery gave before the first picture “popped up” on the phone. Lastly, as the majority states, it is also clear from the record that the officers arrested and were investigating Montgomery for drug violations, and until the picture appeared on the phone, they were not in search of evidence of child pornography and had no reason to believe that child pornography might be found on the phone. Cf. Chavez-Villarreal, 3 F.3d at 128 (concluding in part that consent did not dissipate the taint of a Fourth Amendment violation where “refusal seemed pointless” because the officer “had made known his suspicions about narcotics”). I would find that all of these circumstances surrounding Montgomery’s consent to a search of the phone constituted intervening circumstances and a causal break between the search and the previous violation.
I concur in the reasoning of the remainder of the majority’s opinion, and in its conclusion that the denial of the motion to suppress should be affirmed.