**UNITED STATES of America**

v.

**Lynwood LONG, Appellant.**

**No. 24097.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 7, 1970.

Decided Jan. 25, 1971.

668 (1962) (concurring opinion of Burger, J.) ; State v. Lucas, 30 N.J. 37, 69–71, 152 A.2d 50, 67–68 (1959).

Mr. H. Clifford Allder, Washington, D. C., for appellant.

Mr. Henry F. Greene, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before TAMM and ROBB, Circuit Judges, and GORDON,* U. S. District Judge, Eastern District of Wisconsin.

GORDON, District Judge:

The appellant was convicted by the federal district court of violating 18 U. S.C. § 1952 and 22 D.C.Code §§ 1501, 1502, and 1503, all of which prohibit the operation of co-called "numbers games". His conviction followed the denial of a motion to suppress certain evidence seized from the apartment of one Russ J. Cecchini by an F.B.I. agent possessing a search warrant issued by a United States magistrate.

The issue on appeal is a narrow one; we must determine whether the trial court was correct in finding that the affidavit in support of the search warrant was sufficient to constitute probable cause for the search and seizure. The affidavit in question is reproduced in an appendix to this opinion.

In Aguilar v. Texas, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the court emphasized the deference that reviewing courts should accord to determinations of probable cause made by magistrates in issuing search warrants. In addition, it was stated in United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), that "If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." See also Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), and United States ex rel. Gary v. Follette, 418 F.2d 609, 611 (2d Cir. 1969).

Nonetheless, there are certain basic standards for the content of affidavits in support of search warrants which must be met. In the absence of the minimum required information, no valid basis exists upon which a finding of probable cause can be made.

In Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964), the court weighed the sufficiency of an affidavit that was offered in support of a search warrant and stated:

"[The] magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant * * * was 'credible' or his information 'reliable.'"

Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), is remarkably analogous to the case at bar. The court summarized the affidavit in *Spinelli* as follows (p. 413, 89 S.Ct. pp. 587–588):

"1. The FBI had kept track of Spinelli's movements on five days during the month of August 1965. On

---

* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1964).

four of these occasions, Spinelli was seen crossing one of two bridges leading from Illinois into St. Louis, Missouri, between 11 a.m. and 12:15 p.m. On four of the five days, Spinelli was also seen parking his car in a lot used by residents of an apartment house at 1108 Indian Circle Drive in St. Louis, between 3:30 p.m. and 4:45 p.m. On one day, Spinelli was followed further and seen to enter a particular apartment in the building.

"2. An FBI check with the telephone company revealed that this apartment contained two telephones listed under the name of Grace P. Hagen, and carrying the numbers WYdown 4–0029 and WYdown 4–0136.

"3. The application stated that 'William Spinelli is known to this affiant and to federal law enforcement agents as a bookmaker, an associate of bookmakers, a gambler, and an associate of gamblers.'

"4. Finally, it was stated that the FBI 'has been informed by a confidential reliable informant that William Spinelli is operating a handbook and accepting wagers and disseminating wagering information by means of the telephones which have been assigned the number WYdown 4–0029 and WYdown 4–0136.' "

In holding the affidavit insufficient to support a finding of probable cause, the court in *Spinelli* reaffirmed the standards outlined in *Aguilar*. In addition, however, the court stated that when an affidavit fails to specify how an informant came by his information "* * * it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." (p. 416, 89 S.Ct. p. 589).

See Von Utter v. Tulloch, 426 F.2d 1, 2 (1st Cir. 1970). In our opinion, the affidavit fails to provide the necessary detail to support a finding of probable cause. In terms of *Aguilar,* it fails to assert the "underlying circumstances" upon which the informants based their conclusions.

The government attempts to distinguish *Spinelli* on the basis that in the present action the affidavit stated that the informants' tip was based on the informants' "personal knowledge" of the appellant's activities. This is only a conclusion, however, and, standing alone, it does not cure the lack of specificity inherent in the affidavit. There is no indication of the source of the informants' "personal knowledge", nor are their tips sufficiently detailed to allow a magistrate to "infer that the informant[s] had gained [their] information in a reliable way." *Spinelli,* 393 U.S. at 417, 89 S.Ct. at 589. See Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327 (1959). Furthermore, the fact that information was given by *two* informants adds nothing of substance to the affidavit.

Considerable detail is presented in the affidavit regarding the F.B.I.'s observations of the appellant's comings and goings during the period of August 15, 1969 to September 10, 1969. While some specificity is provided as to the times the observations were made on the days in question, the conduct of the appellant that was observed and reported by the F.B.I. are entirely innocent acts that might be performed by any citizen going about his normal activities. It is averred that on two occasions the appellant looked about, as if to see "if he was being watched"; this is entirely conclusory and insufficient to support a probability that appellant was engaged in some sort of illegal conduct.

In sum, the affidavit presents an assertion that two unamed informants had personal knowledge that the appellant was engaged in a numbers operation in Russ Cecchini's apartment together with a statement of the results of the observations of appellant's movements when entering and leaving the apart-

ment. In our opinion, even if there is no dispute as to the informants' reliability, there is an absence of any corroborative facts, either from the informants or the FBI, sufficient to subject the appellant to a lawful search. The minimum standards of *Aguilar* and *Spinelli* simply have not been met.

Reversed.

## APPENDIX TO OPINION OF THE COURT
### AFFIDAVIT IN SUPPORT OF WARRANT

Affidavit in support of an application for a United States Magistrate's arrest warrant for violation of Title 18, Section 1952, United States Code; and Title 22, Sections 1501 and 1502, District of Columbia Code for Lynwood "Shorty" Long; and in support of a United States Magistrate's search warrant for the premise located at Apartment Number 1604, 2338 24th Street, S.E., Washington, D.C., which apartment bears the name of R. J. Cecchini on the door.

*Statement of Facts*

Information was received on February 3, 1966, from a confidential informant that he had personal knowledge that a bookmaking office was being operated from an apartment located at 1700 Irving Street, N.W., Washington, D.C. Informant advised that there were at least two individuals working in this office.

On February 23, 1966, this same confidential informant advised that he had ascertained that Lynwood "Shorty" Long was one of the individuals working in this bookmaking office. This informant also advised at the time that he had ascertained that Long and the other individual or individuals working in the above bookmaking office were going to move their operation into the State of Maryland in the very near future.

The fact that the above bookmaking office was moved from Washington, D. C. to Prince Georges County, Maryland, was subsequently verified by investigation conducted by the Federal Bureau of Investigation.

Information was received on August 6, 1969, from this same confidential informant that he has personal knowledge that Lynwood "Shorty" Long, who resides in nearby Maryland, is now conducting a numbers operation at the residence of Russ Cecchini in Washington, D.C. strictly by telephone.

The above confidential informant is well acquainted with gambling activities in the Washington, D.C. area and on numerous occasions in the past has furnished information that has been verified as correct either through independent sources or Federal Bureau of Investigation observations or has resulted in arrests.

Another confidential informant advised on September 9, 1969, he has personal knowledge that Lynwood "Shorty" Long has worked in numbers offices in the local area for many years and is currently working in a numbers office, location unknown. This latter confidential informant is also well acquainted with gambling activities in the Washington, D.C. area and has furnished information on numerous occasions in the past that was either verified as correct through independent sources or Federal Bureau of Investigation observations.

According to the records of the Metropolitan Police Department, Russell Joseph Cecchini, 2338 24th Street, S.E., Washington, D.C., was arrested on September 17, 1968, on charges of operating a lottery, maintaining a gambling premise, and possession of numbers slips. On the latter two charges, a judgment of guilty was entered.

*Observations*

At approximately 11:20 a.m., August 15, 1969, Special Agents Bernard A. De Santis and Edward N. Wills observed an automobile belonging to Lynwood "Shorty" Long, which is a 1964 Mercury Sedan bearing District of Columbia license 556–391, parked in front of a house located at 5231 Devonshire Drive, Oxon Hill, Maryland.

At approximately 8:30 a.m., August 26, 1969, Special Agent De Santis ob-

served Long's car parked in front of the above Oxon Hill, Maryland, address. At 2:00 p.m., August 26, 1969, Special Agent De Santis observed Long's vehicle parked in front of 2338 24th Street, S. E., Washington, D.C.

At approximately 8:15 a.m., August 27, 1969, Special Agent De Santis observed Long's automobile parked in front of the above Oxon Hill, Maryland, address. At approximately 2:55 p.m., August 27, 1969, Special Agent De Santis observed Long's automobile parked in front of 2338 24th Street, S.E., Washington, D.C.

At approximately 10:00 a.m., September 2, 1969, Special Agents Dean S. Haney and De Santis observed Long leaving the residence at 5231 Devonshire Drive, Oxon Hill, Maryland, enter his automobile and drive away.

At approximately 11:15 a.m. September 2, 1969, Special Agents Haney and De Santis observed Long's automobile parked in front of 2338 24th Street, S.E., Washington, D.C.

At approximately 1:23 p.m., September 3, 1969, Special Agent De Santis observed Long's automobile parked in the vicinity of 2338 24th Street, S.E., Washington, D.C. At approximately 11:55 p. m., September 3, 1969 Special Agent De Santis observed Long's automobile parked in front of the above mentioned Oxon Hill, Maryland, address.

At approximately 10:02 a.m., September 4, 1969, Special Agent John J. O'Donnell observed Long depart from the residence located at 5231 Devonshire Drive, Oxon Hill, Maryland, enter his automobile and drive away.

At approximately 11:37 a. m., September 4, 1969, Special Agents O'Donnell and Thomas K. Sullivan observed Long's car parked in the 2300 block of 24th Street, S.E., Washington, D.C.

At approximately 7:10 p.m., Special Agents De Santis and Haney observed Long leaving 2338 24th Street, S.E., Washington, D.C., enter his car and drive away.

At 7:44 p.m., September 4, 1969, Special Agents De Santis and Haney observed Long park his automobile in front of the above mentioned Oxon Hill address and enter the residence.

At approximately 11:00 a.m., September 8, 1969, Special Agents De Santis and Haney observed Long leaving the above mentioned Oxon Hill, Maryland, address, enter his automobile and drive away. At approximately 11:40 a.m., September 8, 1969, Special Agents De Santis and Haney observed Long parking his automobile in the 2300 block of 24th Street, S.E., Washington, D.C., and immediately thereafter enter the apartment building located at 2338 24th Street, S.E., Washington, D.C. At the time Long entered this building it was observed that he looked around in various directions to see if anyone was watching him.

At approximately 7:00 p.m., September 8, 1969, Special Agents De Santis and Haney observed Long leaving 2338 24th Street, S.E., Washington, D.C., enter his automobile and drive away.

At 7:18 p.m., September 8, 1969, Special Agents De Santis and Haney observed Long entering the residence located at 5231 Devonshire Drive, Oxon Hill, Maryland.

At approximately 10:22 a.m., September 9, 1969, Special Agents De Santis and Haney observed Long leaving the above mentioned Oxon Hill, Maryland, address, enter his car and drive away.

At approximately 11:56 a.m., September 9, 1969, Special Agent Robert E. McKenna observed Long parking his automobile in the 2300 block of 24th Street, S.E., Washington, D.C.,

At approximately 11:58 a.m., September 9, 1969, Special Agent McKenna observed Long entering Apartment Number 1604, 2338 24th Street, S.E., Washington, D.C. At the time Long entered this apartment building it was observed that he looked around in several directions to see if he was being watched.

Special Agent De Santis observed Long's automobile still parked in the

2300 block of 24th Street, S.E., Washington, D.C., as late as 3:30 p.m., September 9, 1969.

At approximately 11:06 a.m., September 10, 1969, Special Agents Robert E. Taylor and McKenna observed Long in his vehicle leaving the area of the 5200 block of Devonshire Drive, Oxon Hill, Maryland.

At approximately 11:45 a.m., September 10, 1969, Special Agent Elmer W. Rawls, Jr., observed Long park his car in the 2300 block of 24th Street, S.E., Washington, D.C., and then enter the residence at 2338 24th Street, S.E., Washington, D.C.

Based on the reliability of the information received, the observations made, the time of day that the above activity was carried out and the knowledge and training of the Special Agents as to the methods employed by persons engaged in a numbers operation, it is the firm belief of the Special Agents that Lynwood "Shorty" Long is now actively engaged in conducting a numbers operation.

It is further believed that there is being concealed in the premise located at Apartment Number 1604, 2338 24th Street, S.E., Washington, D.C., numbers, betting slips, records and related gambling paraphernalia used in conducting this numbers operation and that the above-mentioned premise is now being used as an office for this numbers operation, in violation of the provisions of Title 18, Section 1952, United States Code; and Title 22, Section 1501 and 1502, District of Columbia Code.

/s/ Bernard A. De Santis
Special Agent

Federal Bureau of Investigation

Subscribed and sworn to before me this 11th day of September, 1969

/s/ John F. Doyle
United States Magistrate for the District of Columbia