**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Anthony LEGATO and Abraham Migdall,
Defendants-Appellants.**

**No. 71–3336.**

United States Court of Appeals,
Fifth Circuit.

June 14, 1973.

Goldberg, Circuit Judge, concurred
specially and filed opinion.

Melvyn Kessler, Miami, Fla., Robert Bailey, Chicago, Ill., for defendants-appellants.

Robert W. Rust, U. S. Atty., William P. Cagney, U. S. Dept of Justice, Miami, Fla., Frederick W. Read, III, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

The appellants, Anthony Legato and Abraham Migdall, were charged in a three-count indictment on September 30, 1971 with the following criminal offenses: (1) conspiracy to knowingly and intentionally distribute heroin, a Schedule I controlled substance, 21 U.S.C. § 841(a)(1); (2) knowingly and intentionally possessing heroin with an intent to distribute, 21 U.S.C. § 841(a)(1); and (3) knowingly and intentionally attempting to distribute heroin, 21 U.S.C. §§ 841(a)(1), 846.[1] After entering not guilty pleas, the appellants were tried by a jury and found guilty as charged. Both received concurrent 10 year sentences under each count and, in addition, were fined $10,000. We affirm.

I

On August 11, 1971 the FBI in Miami, Florida received an anonymous tip over the telephone that someone carrying a bomb in an orange shopping bag would attempt to board an airplane leaving for Chicago that afternoon at 4:00 p. m. from either the Miami or Fort Lauderdale airport.[2] This information was relayed to officials of Delta Airlines who in turn alerted all ticket agents and other personnel. Specific reference was made to a 4:10 p. m. Delta flight from Fort Lauderdale to Chicago.

At approximately 3:30 p. m., Legato and Migdall appeared at the Delta Airlines ticket counter in the Fort Lauderdale airport where Legato validated a return ticket to Chicago under the name of "A. Martino." Neither man had an orange shopping bag. A few minutes later, however, they were seen by a Delta ticket agent walking past the counter toward the gate where the 4:10 p. m. Delta flight was scheduled to depart. This time the agent noticed that Legato was carrying a bright orange shopping bag in which a gift wrapped package was visible.

At Gate 12, the station agent, who had been forewarned of the appellants' arrival, removed the flight coupon from Legato's ticket and assigned him a seat on the airplane. Meanwhile, two Delta Airlines security agents, William Bratton and Barry Brender, and FBI Agent Patrick Murray,[3] proceeded to the boarding area. There they observed Legato and Migdall sitting down in the waiting room of the boarding area engaged in conversation with the orange shopping bag on the floor between them. In response to these developments, FBI Agent Murray went to the airline office to call for the assistance of a Navy bomb squad while Bratton announced over the public address system that a bomb threat had been received and that all passengers were to return to the ticket area to reclaim their baggage and submit to a security search.

---

1. As to this count of the indictment, Legato was charged with the substantive offense of attempt and Migdall was charged as an aider and abettor under 18 U.S.C. § 2.

2. At least 2 telephone calls were received warning that a bomb would be carried aboard the aircraft.

3. FBI Agent Murray originally came to the airport that afternoon on another matter. However, when he was told of the bomb threat, he began to take an active role in the surveillance activities at the boarding gate.

Along with the other passengers, the appellants began walking toward the ticketing area. Legato stopped when he reached the ticket counter, but Migdall, who was then carrying the orange shopping bag, continued out of the door of the terminal and across the street into the parking lot. He was followed all of the way from Gate 12 by Delta security agent Brender who stopped him and took possession of the shopping bag. At about the same time this was taking place, Legato was likewise taken into police custody. Both men were escorted to an office in the Delta operations area and the orange shopping bag was turned over to FBI agent Murray.

Prior to conducting an interrogation, Murray apprised the appellants of their constitutional rights and explained that an anonymous phone call had been made to FBI officials advising them that a man flying to Chicago at 4:00 p. m. would be carrying a bomb on board in an orange shopping bag. Migdall said that the package in the shopping bag did not contain a bomb, but rather a coffee percolator which was a gift for a friend he was supposed to meet at the airport. He denied that Legato was the friend, however, saying, "I've never seen that man before in my life." Legato concurred in that statement and also declared that he and Migdall had not been sitting together in the Gate 12 boarding area. At that point, a Delta employee informed Murray that Legato was flying under the name of "A. Martino."

Although Migdall refused to open the gift wrapped package himself, he readily agreed to allow Murray to do so.[4] Murray took the package to a scheduled area of the airport and cautiously examined the contents. He found that it contained a white powdery substance in a plastic container which on the basis of a field test was determined to be heroin and not explosives as was originally feared.[5] The actions of the officers in handling and opening the package clearly demonstrate that they were fearful that an explosive substance was contained therein.

## II

■ The appellants first contend that the trial court erred in denying their motion to suppress for use as evidence the heroin involved.[6] They complain that the search of the package by the investigating officers violated the fourth amendment since it was incident to an arrest which was made without probable cause. They further contend that the search cannot be sustained as an investigative stop and protective frisk under principles recognized in Terry v. Ohio, 392 U. S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). We reject the appellant's argument on both scores, believing that there are at least two legal concepts upon which the search can be upheld.

## AIRPORT SEARCH

■ In United States v. Moreno, 475 F.2d 44 (5th Cir. 1973) [1973], this court recognized that the public danger posed by air piracy has transformed the

---

4. At the suppression hearing, FBI Agent Murray described this phase of his conversation with Migdall as follows: "Also at that time I came back and I spoke to Mr. Migdall, trying to find out about the package. I asked him if he would open it. He said no. I asked him if I could. He said, 'Sure. Go ahead and open it. It's only a coffee percolator. It's for a friend of mine.' He said it was for a friend who was going to Chicago." (p. 22 transcript of suppression hearing).

5. At the sheriff's office Migdall spontaneously stated: "Ten more minutes and it would have been in the air."

6. Legato points out, quite correctly we think, that since he was charged with possession of contraband, he has standing by virtue of the Supreme Court's decision in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 702 (1960) to move for the suppression of the evidence on fourth amendment grounds even though he was not actually searched.

airport into a "critical zone where special fourth amendment considerations apply." 475 F.2d at 51. Though the *Terry* and *Adams* decisions were followed in that case,[7] the court rejected the view that "airport security officials must always confine themselves to a 'pat down' search where there is a proper basis for an air piracy investigation." 475 F.2d at 51. It indicated that while such a per se restriction on the authority to search might be sufficient to protect a police officer from harm in a street encounter, it would not necessarily be adequate to ensure the safety of those in need of protection from air piracy. In other words, though it was realized that the fourth amendment intrusion incident to an airport search might be greater in degree than that resulting from the ordinary stop and frisk, the *Moreno* court made it clear that such an intrusion is not unconstitutional if it is based upon a particularized set of facts which reasonably substantiates the investigating officer's belief that the individual searched was armed in some fashion and hence a threat to air security. 475 F.2d at 50.

■ Relating the principles announced in *Moreno* to the case at hand, the question before this court is whether in the airport context the apprehension of Legato and Migdall and the search of the package for explosives violated their fourth amendment rights. We are compelled to answer this question in the negative, finding as we do, that the investigating officers had reasonable grounds to believe that the action taken was appropriate.

After the announcement of the bomb search Migdall appeared to be leaving the terminal with the orange shopping bag which until that point had been in ticket holder Legato's possession. The significance of this turn of events considered in light of Legato's and Migdall's reaction, was that an element of corroboration was supplied which tended to support the details of the informant's report of criminal conduct which had theretofore been less certain. The circumstances then facing the investigating officers left only two available courses of action. One was to make an investigative stop long enough in duration to allow an inquiry into the possibility of criminal behavior. The other was to do nothing, thus letting Migdall escape with the possible consequence that he and Legato would only be thwarted temporarily in their plans. Given the current threat to public safety posed by air piracy as well as the inherent destructive potential of a bomb, it is inconceivable to us that the officers would choose the latter alternative.[8] Under the circumstances, it was clear that with only minimal inconvenience to all concerned, a brief stop and inquiry into the contents of the shopping bag could quickly and conclusively resolve

---

7. Thus far, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) has been deemed controlling by all of the circuits which have considered the question of security searches in the airport context. See United States v. Slocum, 464 F.2d 1180 (3d Cir. 1972); United States v. Bell, 464 F.2d 667 (2d Cir. 1972); United States v. Epperson, 454 F.2d 769 (4th Cir. 1972); United States v. Lindsey, 451 F.2d 701 (3d Cir. 1971). Although recently two district courts have held airport searches to be invalid, their decisions have likewise recognized the applicability of the *Terry* rationale to cases similar to the instant case. United States v. Meulener, 351 F.Supp. 1284 (C.D.Cal.1972); United States v. Kroll, 351 F.Supp. 148 (W.D. Mo.1972).

8. In United States v. Meulener, 351 F. Supp. 1284 (C.D.Cal.1972) the search of a passenger's suitcase was held invalid on two separate fourth amendment grounds. One of the grounds was that the defendant was not given the opportunity to decline to submit to the search upon the condition that he not be allowed to board the plane. This issue was not raised directly in *Moreno*, nor is it properly before this court now. But we observe that the broad implication of *Moreno* is that once the facts become sufficient to justify an air piracy investigation, a law enforcement official has the authority to conduct a protective search without regard to the individual's lack of consent.

what appeared to be an extraordinarily dangerous situation. In our opinion, the stopping of Legato and Midgall is clearly sanctioned by *Moreno*. Moreover the officers' conduct was precisely the kind of intermediate police response found to be appropriate in Terry v. Ohio, *supra*, and Adams v. Williams, *supra*, where the requisite level of information necessary for probable cause to arrest is lacking. Adherence to the commands of the fourth amendment, as the Supreme Court has said, does not mean that a law enforcement official must "simply shrug his shoulders and allow a crime to occur or a criminal to escape." Adams v. Williams, *supra*, 407 U.S. at 145–146, 92 S. Ct. at 1923, 32 L.Ed.2d at 616, 617.

■ We next must determine whether the fourth amendment intrusion involved in the search of the package for explosives was likewise consistent with the principles recognized in *Moreno*. Once FBI Agent Murray began questioning Legato and Migdall, two additional facts came to light which tended to reinforce his already substantial suspicion that the package in the orange shopping bag contained a bomb. First, both men denied knowing each other despite being told that they were seen sitting together in the boarding area only minutes earlier.[9] Second, it was brought to Murray's attention that Legato was flying under the name of "A. Martino." Thus, even though Migdall attempted to explain that the package

contained a coffee percolator and not a bomb, we believe that Murray was justified in refusing to accept this story. Moreover, we think that his decision to search the package at that point was demanded by the sheer urgency of the situation. Not only did Murray have his own safety to consider but the safety of many others in the vicinity who might be killed or injured if a bomb was detonated was involved as well. On the facts of this case society's interests in self-protection were, if anything, greater than they were shown to be in *Moreno*. Accordingly, we hold that this search did not violate the appellants' fourth amendment rights.

Throughout the preceding discussion, we have implied that it is of no consequence to the result reached in this decision that an anonymous tip triggered the chain of events leading up to the stopping of Legato and Migdall and the protective search of the package for explosives. The appellants argue, however, that the action taken by the officers should not be upheld because the tip failed to meet the standards of informer reliability set forth in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968). Even assuming that the tip was insufficient under *Aguilar* and *Spinelli*,[10] we cannot agree with this argument. The criteria established to determine the reliability of an informer in

9. The evidence adduced at the trial showed that Migdall had met Legato at the airport in Miami the day before his planned departure. Migdall also brought Legato to the airport on the occasion in question.

10. The fact that we make this assumption should not be taken as a conclusion that we recognize it to be the law. Indeed, the reverse appears to be true. There are a number of recent cases where the investigation leading up to the arrest or search was triggered by the tip of an untested or unknown informant. *See, e. g.*, United States v. Berry, 150 U.S.App.D.C. 187, 463 F.2d 1278, 1281 (1972); Gov't of Canal Zone v. Wright, 460 F.2d 1402 (5th Cir.

1972); United States v. Dzialak, 441 F.2d 212, 216 (2d Cir. 1971); United States v. Viggiano, 433 F.2d 716 (2d Cir. 1970). For our purposes, the principal point is the high probative value that these decisions place upon police corroboration of such tips in applying the *Spinelli* and *Aguilar* standards. This emphasis on corroboration is in keeping with the Supreme Court's decision in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In the instant case, there was extensive corroboration of the original tip and thus we are unwilling to concede that *Spinelli* and *Aguilar* would operate to invalidate the action taken by the officers in detaining Legato and Migdall and searching the package for explosives.

those two cases applies only when the question is whether there was probable cause to arrest or probable cause for the issuance of a search warrant in the circumstances there under consideration. The instant case does not fall into either of those categories since the question here presented arises under the line of decisions growing out of Terry v. Ohio, *supra*.

Moreover, Adams v. Williams reveals very plainly that the inadequacy of a tip under *Aguilar* and *Spinelli* is not necessarily fatal to an investigative stop and protective search based thereon if other factors are present to give the tip some "indicia of reliability." The two factors most prominently mentioned in *Adams* were the past reliability of the informant and the existence of on-the-scene verification of his tip. Here, although nothing at all was known about the anonymous tipster's reliability, there was on-the-scene corroboration of almost every innocent detail of his report, plus circumstances which strongly suggested the possibility of criminal activity. This corroboration gave the report sufficient indicia of reliability under Adams v. Williams, *supra*, to justify the conduct of the officers.

### CONSENT

As a second and alternative ground for holding that the heroin was properly admitted into evidence, we hold that Migdall consented to the search of the package for explosives and thereby waived his fourth amendment rights. It should also be noted that Legato disclaimed any interest in the package, denied that he had ever possessed it and denied any acquaintance with Migdall at the time of the search. Before developing this · point further, however, it should be noted that our conclusion in this regard rests upon our determination that the initial decision to detain Legato and Migdall was valid. Thus, the following discussion is included to refute any possible claim that the search of the package went beyond the bounds of Terry v. Ohio, *supra,* and Adams v. Williams, *supra,* as they were interpreted and applied in *Moreno.*

■ Consent may constitute a waiver of fourth amendment rights, Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946), but to be valid a waiver must be an intelligent relinquishment of a known right or privilege, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Where a person is under arrest or in custody and consent to search is sought by police, the rule has emerged in this circuit. United States v. Canseco, 465 F.2d 383 (5th Cir. 1972), as well as others, see, *e. g.*, United States v. Candella, 469 F.2d 173 (2d Cir. 1972); United States v. Menke, 468 F.2d 20 (3d Cir. 1972); United States v. Cox, 464 F.2d 937, 947 (6th Cir. 1972); United States v. Noa, 443 F.2d 144 (9th Cir. 1971), that absent proof of actual coercion or intimidation such consent constitutes a valid waiver of fourth amendment rights *if prior to the search Miranda* warnings are given. Moreover, it is clear under these cases that the validity of this waiver is not affected by a failure to include in the *Miranda* warnings a specific reference to the fourth amendment.

■ These principles are squarely in point with the facts surrounding the search in the instant case. Both Legato and Migdall were given *Miranda* warnings upon their arrival in the office where they were questioned. They were also informed of the reasons for their detention and were given an opportunity to explain their presence in the airport. Finally, when asked by FBI Agent Murray for permission to search the package, Migdall answered, "Sure, go ahead." The appellants make no claim of coercion or undue pressure and none is apparent from the record. The conclusion is inescapable that Migdall's consent resulted in a valid waiver of his fourth amendment rights. Therefore, under the facts and the established law the heroin yielded by the search was properly admitted into evidence against both Legato and Migdall.

### III

The appellants press two additional arguments seeking reversal of their con-

victions. They claim various insufficiencies in the evidence and that the closing argument of the prosecutor was so prejudicial that a new trial is required. We have carefully reviewed the record in this case and find both of these contentions to be without merit. Accordingly, the judgments of conviction against appellants Legato and Migdall are affirmed.

Judgment affirmed.

GOLDBERG, Circuit Judge (specially concurring):

Under the commands of *Moreno* I concur only in the result. The exigencies of skyjacking and bombing, however real and dire, should not leave an airport and its environs an enclave where the Fourth Amendment has taken its leave. It is passing strange that most of these airport searches find narcotics and not bombs, which might cause us to pause in our rush toward malleating the Fourth Amendment in order to keep the bombs from exploding. Seeking to prevent or detect crime, standing alone, has never justified eroding the right to privacy, and I continue to hope that we will soon return to the hallowed and halcyon days of the Fourth Amendment.